## PICKERING vs. MARSH.

P., at the request of S. and B., signed a note, as surety, and they promised to indemnify him. The note was made payable to a bank, and was also signed by S. and B., as sureties, and was drawn to be executed by M. as principal, which was afterwards done, but the note was in fact made for the benefit of S. and B., who procured it to be discounted at the bank, and afterwards made partial payments. All the signers of the note failed, but the bank collected the balance of P.—S. and B. made an assignment of their property, for the exclusive benefit of their endorsers or creditors of the first class, and P. executed it, thereby releasing them from all claims and demands; and under the assignment he claimed the amount paid upon this note, describing himself as their indorser, and it was allowed.—*Held* that P. could not afterwards sustain an action against M. for money paid, either as surety for him, or as co-surety with him, for S. and B.

ASSUMPSIT for money paid. From the report of a referee, who, by agreement of the parties, stated the facts, it appeared that on August 14, 1827, Marsh, the defendant, and Sherburne and Blunt, Robert Blunt, and Pickering the plaintiff, executed a joint and several note, payable to the Piscataqua Bank for $1000, in sixty days and grace. In the note Marsh was described as principal, and the others as sureties, and the note was so signed, but it was in fact made exclusively for the benefit and accommodation of Sherburne and Blunt. Pickering, the plaintiff, signed as surety, at the request of Sherburne and Blunt, before the note was signed by Marsh as principal, and they at that time expressly promised to indemnify him. They procured it to be discounted at the bank, and received all the avails of it.

Pickering and Marsh had both lent their names for the accommodation of Sherburne and Blunt in other instances, either in a similar form, or as endorsers of the notes of Sherburne and Blunt, but they had no such connexion in business with each other.

Sherburne and Blunt made partial payments upon the note, but a balance was due the bank April 26, 1828, when

all the signers failed ; Sherburne and Blunt being at that time indebted to Pickering, and Marsh indebted to them, as he was also at the time the note was signed.

The bank collected the balance of Pickering, and a general assignment of their property, for the exclusive benefit of their endorsers or creditors of the first class having been made by Sherburne and Blunt, whereby the creditors who executed it released them from all claims and demands whatsoever, Pickering became a party to this assignment, and among other claims presented one founded upon this note to the assignees, and used the testimony of Sherburne and Blunt, and of Marsh, to procure the allowance of it by the assignees.    The claim was specified in these words :—

" For Geo. Marsh's note, dated August 14, 1827, as their indorser,"    -    -    -    -    -    -    -    $766
Interest, &c.

It was allowed in full, and Pickering received a dividend upon it.    After this, Marsh claimed of Pickering a discharge from any liability on the note, alleging that Pickering had promised to discharge him if he procured the assignees of Sherburne and Blunt to allow the note among their honorary paper, and pay a dividend upon it, but Pickering replied that circumstances had altered.

*Cutter*, for the plaintiff.

*Bartlett*, for the defendant.

Parker J.    The note in question was made for the benefit of Sherburne and Blunt, although the defendant executed it as principal, and the other parties as sureties ; and the plaintiff must have known this fact, for he put his signature to it at the request of Sherburne and Blunt, before the defendant had signed it, and on their promise to indemnify him.    It is incredible that he should not have understood that it was an accommodation note, for their benefit, for why should they

procure notes to be executed for the defendant, which he had not signed at the time, and give their own promise of indemnity.

How far the knowledge of this fact might have affected the plaintiff's right to call upon the defendant as principal, had the plaintiff been compelled to pay the note, and the matter rested there, it is unnecessary to decide. An accommodation acceptance is not discharged by the mere knowledge of another party that he is such, and notwithstanding the plaintiff's knowledge the defendant signed as principal for the accommodation of Sherburne and Blunt, the description in the note might perhaps have been evidence that the defendant intended, as to the plaintiff, to stand in the character of principal, and have authorized the plaintiff to consider and treat him as the actual principal, had there been no subsequent transactions to alter the case. 3 *Wend.* 397, *Warner* vs. *Price.*

The circumstance, also, that Sherburne and Blunt agreed to indemnify the plaintiff might not have deprived him of his claim on the defendant as principal, if the plaintiff would but for that have had a right to hold him as such. 4 *Wend.* 432, *Beaman* vs. *Blanchard.*

But the plaintiff, after being compelled to pay the balance due upon the note, made a claim upon Sherburne and Blunt for the whole amount as a debt due him from them. This claim he made for money paid as their indorser, or surety, and not upon a promise to indemnify him for signing as surety of the defendant, nor for contribution as a co-surety with them for him.

It was only upon the ground that it was in truth their debt, and he a surety for them, that it could have been allowed under their assignment; and he used the testimony of Sherburne and Blunt and of the defendant to establish that fact.

Under these circumstances Sherburne and Blunt must be considered with respect to these parties to have been princi-

pals, and the plaintiff and defendant as their sureties, according to the truth of the case, notwithstanding the manner in which the note was drawn.

The plaintiff's claim, thus established, was allowed, and he by executing the indenture of assignment discharged the real debtors from all claims and demands whatever. He cannot after this be permitted to turn round and treat the defendant as a principal also. If he had an election in the first instance, by reason of the description in the note, to consider the defendant as principal, it can no longer exist when knowing Sherburne and Blunt to be the actual principals, he signs upon their promise to indemnify him, and afterwards makes his claim upon them as the real debtors, representing himself as their surety, and gives them a discharge.

Nor can he recover of the defendant, as a co-surety, a contribution for the balance which has not been received from the avails of the effects of Sherburne and Blunt, because should he recover in this case upon that ground, the defendant must have a right to resort to Sherburne and Blunt immediately for repayment, and they would thus be compelled indirectly to pay the plaintiff a portion of the demand from which he has fully released and discharged them.

Having entered into a composition with the actual debtors, with full knowlege of the facts, and discharged them, those who were in truth co-sureties with him are also discharged, upon the same principle that a drawer, indorser, surety, or guarantor is discharged by a release from the holder of the bill or note, to the acceptor, prior indorser or principal debtor. 3 *Esp. R.* 49 ; 2 *Bos. and Pul.* 62, *English* vs. *Darley ;* 6 *Mass.* 88, *Sargent* vs. *Appleton ;* 16 *Johns.* 41, *Lynch* vs. *Reynolds ;* 11 *Ves.* 410, *Exparte Wilson ;* 4 *Barn. & Cres.* 506, *Lewis* vs. *Jones ;* 4 *Ward.* 360, *Brown* vs. *Williams ;* 2 *Johns. Ch. R.* 560, *King* vs. *Baldwin ;* 4 *N. H. R.* 221, *Grafton Bank* vs. *Kent.*

*Judgment for the defendant.*